UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA GRISSOM, | ) | No. EDCV 08-500 CW |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

## I. BACKGROUND

Plaintiff Joshua Grissom was born on June 24, 1972, and was thirty-five years old at the time of his administrative hearing. [Administrative Record ("AR") 49, 331.] He has a ninth grade education and no past relevant work experience. [AR 18, 335.]

Plaintiff alleges disability on the basis of injuries from an automobile accident and depression. [AR 12.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on April 10, 2008, and filed on April 22, 2008.  On October 17, 2008, defendant filed an answer and plaintiff's Administrative Record ("AR").  On February 25, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 29, 2005, alleging disability since February 19, 2005. [AR 10.] After the applications were denied initially and on reconsideration, plaintiff requested an administrative hearing, which was held on October 22, 2007, before Administrative Law Judge ("ALJ") Edward Graham. [AR 331.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff, third party witness Lisa Whittaker, and vocational expert Randi Hetrick. [Id.]  The ALJ denied benefits in a decision filed on November 2, 2007. [AR 10-20.]  When the Appeals Council denied review on February 27, 2008, the ALJ's decision became the Commissioner's final decision. [AR 3.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the

court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

>     Step one: Is the claimant engaging in substantial
> gainful activity?  If so, the claimant is found not
> disabled.  If not, proceed to step two.
>     Step two: Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not
> disabled is appropriate.
>     Step three: Does the claimant's impairment or
> combination of impairments meet or equal an impairment
> listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
> so, the claimant is automatically determined disabled.  If
> not, proceed to step four.
>     Step four: Is the claimant capable of performing his
> past work?  If so, the claimant is not disabled.  If not,
> proceed to step five.
>     Step five: Does the claimant have the residual
> functional capacity to perform any other work?  If so, the
> claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v.

4

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

## B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had never engaged in substantial gainful activity (step one); that plaintiff had "severe" impairments, namely status post pelvic fracture with hematoma and mildly bulging lumbar spine discs with L5 pars defect (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 12-13.] Plaintiff was found to have an RFC to perform work that would require him to lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours of an eight-hour workday and sit for six hours of an eight-hour workday, alternating sitting and standing; and work that would require only occasional climbing, balancing, stooping, kneeling, crouching and crawling. [AR 13-14.] Plaintiff had no past relevant work (step four). [AR 18.] The vocational expert testified that a person with plaintiff's RFC could perform work existing in significant numbers in the national economy at the light or sedentary exertional level, such as cashier II, storage facility clerk, office helper, order clerk, telephone quote clerk and charge account clerk (step five). [AR 19.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 20.]

## C. ISSUES IN DISPUTE

---

Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

The parties' Joint Stipulation raises the following disputed issues:

1. Whether the ALJ properly considered the record of Plaintiff's depression;
2. Whether the ALJ properly developed the record;
3. Whether the ALJ properly considered the lay witness testimony;
4. Whether the ALJ properly considered the severity of Plaintiff's mental impairment;
5. Whether the ALJ properly rated the functional limitations resulting from Plaintiff's mental impairment;
6. Whether the ALJ properly considered the opinion of the consultative orthopedic evaluator; and
7. Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 3.]

**D.   ISSUES ONE, TWO, FOUR, and FIVE: MENTAL IMPAIRMENT**

On February 19, 2005, Plaintiff had a motor vehicle accident and was hospitalized for multiple fractures to his pelvis. [AR 14, 92.] During his hospitalization, on March 1, 2005, Plaintiff was given a psychiatric consultation by Dr. Arjun Reyes for an assessment of depression. [AR 108-09.] Dr. Reyes reported that Plaintiff felt anxiety over his medical bill and his ability to walk, but Plaintiff denied significant depressive symptoms, suicidal or homicidal thoughts, or a previous psychiatric history or psychiatric medication; Dr. Reyes observed no psychotic symptoms. [AR 108.] Dr. Reyes diagnosed an adjustment disorder with mixed emotional features, a

Global Assessment of Functioning ("GAF") Score of 45[2] on admission, and recommended no psychiatric medications, no involuntary psychiatric hold, and future follow up as required. [AR 109.]  Plaintiff was discharged from the hospital on March 8, 2005, in stable condition. [AR 92-93.]

Following the accident, Plaintiff complained of depression, anxiety, poor sleep, withdrawal, poor concentration, and loss of interest. [AR 257.]  Dr. Greg Hirokawa performed a comprehensive psychiatric evaluation of Plaintiff on March 19, 2006. [AR 257-62.] Dr. Hirokawa noted that Plaintiff reported receiving mental health treatment for the prior two years but that he was not currently receiving treatment; Plaintiff's prior examination by Dr. Reyes was also referenced. [AR 258.]  Upon mental status examination, Dr. Hirokawa concluded that Plaintiff's "symptoms and severity of depression were within the mild range" and that his "symptoms of depression were primarily due to his medical problems and the associated limitations." [AR 261.]  Dr. Hirokawa diagnosed major depression, single episode, generalized anxiety disorder, alcohol dependence in remission and a GAF score of 65.[3] [Id.]  Dr. Hirokawa

---

[2] A GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient.  A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job.

[3] A GAF score in the range of 61 through 70 denotes some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships.

concluded that Plaintiff's ability in several areas of mental functioning was "fair." [AR 262.]  Subsequently, a state agency physician determined that based on a review of the record, including Dr. Hirokawa's opinion, Plaintiff had no impairment that would last twelve months, that his mental impairment was "non-severe," and that his depression was "situational" because it related to the motor vehicle accident and personal finances. [AR 278.]

In the administrative decision, the ALJ discussed Dr. Hirokawa's examination at length, including the diagnosis of a "mild, situational depression with a GAF of 65, which indicates only mild symptoms and mild limitations in occupational and/or social functioning." [AR 13.] The ALJ also noted the state agency review physician's findings. [Id.]  The ALJ credited both opinions, finding that Plaintiff's "mild depressive symptoms were related only to the immediate effects of his accident and would not last for 12 months or more." [Id.]

Plaintiff asserts that the ALJ's evaluation of the mental health evidence was erroneous or not supported by substantial evidence for the following reasons:  Dr. Hirokawa's opinion that Plaintiff's depression was in the "mild range" was ambiguous with his diagnosis of "major depression, single episode" and required clarification; the ALJ failed to mention that Dr. Reyes assigned Plaintiff a GAF score of 45; further development of the record was required based on Plaintiff's report to Dr. Hirokawa that he had previously sought mental health treatment; the evidence establishes that Plaintiff has a "severe" mental impairment; and the ALJ did not properly rate Plaintiff's degree of mental impairment. [See Joint Stipulation, Issues One, Two, Four and Five.]  None of these claims has merit.

First, Dr. Hirokawa's opinion did not require clarification, nor

did it call for further development of the record.  Plaintiff appears to assert that Dr. Hirokawa's diagnosis of "major depression, single episode" is inconsistent with Dr. Hirokawa's subsequent statement that Plaintiff's "symptoms and severity of depression were within the mild range." [JS 4.]  However, despite any apparent inconsistency, the evidence on the whole supports the ALJ's conclusion that Plaintiff has only a "mild, situational depression":  Dr. Hirokawa opined that Plaintiff's depression was attributable to the "single episode" of the automobile accident and the resulting medical problems, that Plaintiff's prognosis for improvement within the next twelve months was fair, and that his ability in all areas of mental functioning was fair; the state agency review physician reasonably concluded that based on Dr. Hirokawa's opinion, Plaintiff's mental impairment was situational, would not have a duration of twelve months, and was non-severe; and nothing else in Dr. Hirokawa's opinion suggested that Plaintiff's level of impairment was more than "mild." [AR 261-62, 277-78.]  Neither did Dr. Hirokawa's reference to the possibility that Plaintiff had prior mental health treatment trigger a duty to develop the record further:  Plaintiff offered no evidence of such treatment, his statement to Dr. Hirokawa regarding the treatment was vague as to both the provider and period of the treatment, Plaintiff has not elsewhere claimed that he received mental health treatment, and Plaintiff expressly denied receiving any mental health treatment to Dr. Reyes. [AR 108.]  Under these circumstances, further development of the record was not required.

   Second, the ALJ's failure to mention that Dr. Reyes diagnosed Plaintiff with a GAF score of 45 was not reversible error.  Dr. Reyes' examination was conducted less than two weeks after Plaintiff had a

major automobile accident, and the GAF score reflected Plaintiff's condition only "on admission." [AR 109.] Moreover, Dr. Reyes concluded that Plaintiff had no psychotic symptoms, did not need psychiatric medication, did not require psychiatric hospitalization, and that follow-up would be conducted only as needed; these findings were consistent with the rest of the record, including the opinion of Dr. Hirokawa and the state agency review physician.

Finally, Plaintiff's mental impairment was properly rated in order to make a finding that Plaintiff did not have a "severe" mental impairment. Contrary to Plaintiff's assertion, the ALJ did rate Plaintiff's degree of impairment in various areas of mental functioning. [See Psychiatric Review Technique Form ("PRTF"), AR 263-76.] Based on this evidence and the record on the whole, substantial evidence supported the ALJ's finding that Plaintiff's mental impairment was not "severe" because Plaintiff had no more than a slight abnormality or a combination of slight abnormalities which had no more than a minimal effect on his ability to work. See Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). As discussed above, the opinions of Dr. Reyes, Dr. Hirokawa, and the state agency review physician, as well as the absence of any evidence in the record to suggest that Plaintiff's depression was more than situational or that his ability to work was more than minimally effected, does not call into question the ALJ's step two finding.

**E.   ISSUE THREE: THIRD PARTY TESTIMONY**

During the administrative hearing, testimony was taken from Lisa Whittaker, Plaintiff's girlfriend. [AR 350-54.] Ms. Whittaker testified that she sees Plaintiff "quite often," "sometimes on the weekend." [AR 350.] She further testified that Plaintiff "transitions

between sitting and laying," "doesn't do a whole lot of walking," does not do many chores, and can't stand, sit or lay down for very long. [AR 351-52.] The ALJ did not directly address Ms. Whittaker's testimony but only noted that it was inconsistent with Plaintiff's testimony that he lays down for six hours daily. [AR 18.] Plaintiff asserts that the ALJ did not properly evaluate Ms. Whittaker's lay witness testimony. [JS 10-11.]

In determining whether a claimant is disabled, an ALJ must take into account lay witness testimony concerning a claimant's ability to work unless the ALJ expressly determines not to and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1053; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006). Here, the ALJ's failure to fully address Ms. Whittaker's testimony was harmless error. Other than the inconsistency between Ms. Whittaker and Plaintiff's statements regarding the length of time that Plaintiff lays down during the day, Ms. Whittaker's testimony was substantially similar to Plaintiff's testimony: both testified that Plaintiff could not sit, lay down or stand for "too long" and must constantly change positions. [Compare AR 339 with AR 350-54.] The ALJ rejected Plaintiff's testimony with clear and convincing reasons that were not

challenged on appeal.[4]  Accordingly, Ms. Whittaker's testimony did not add substantial weight to plaintiff's claim.  Cf. Robbins, 466 F.3d at 885 (finding reversible error in failure to consider testimony of claimant's son, noting that "[b]ecause the ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the son's] testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination")(citations and internal quotation marks omitted).  Under these circumstances, the failure to address fully this evidence was inconsequential to the ultimate determination of non-disability.  Stout, 454 F.3d at 1055.

**F.   ISSUES SIX AND SEVEN: ORTHOPEDIC EVIDENCE**

In June 2007, plaintiff had a Complete Orthopedic Evaluation conducted by Dr. Rajeswari Kumar. [AR 304-10.]  Upon physical examination and review of Plaintiff's medical records, Dr. Kumar diagnosed status post motor vehicle accident and status post abdominal surgery, chronic low back pain without radiculopathy, hip pain and probable bilateral osteoarthritis and status post pelvic fracture. [AR 309.]  With respect to functional limitations, Dr. Kumar stated that Plaintiff could stand, walk and sit for a total of six hours in an eight-hour workday, that he "needs intermittent breaks and the amount of time he can sit continuously is two hours, and stand continuously

---

[4] The ALJ cited the following reasons to make an adverse credibility determination:  1. Plaintiff had an extremely poor work history; 2. Plaintiff overstated the length of his hospitalization following the accident; 3. Plaintiff alleged trauma to his internal organs when radiographic studies showed no abnormalities; 4. Plaintiff failed to participate in occupational and physical therapy; 5. Plaintiff did not obtain a primary care physician; 6. Plaintiff takes only Ibuprofen for his pain; and 7. the record did not support Plaintiff's claim that he needed back surgery. [AR 18.]

and walk continuously for one hour," and that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently. [Id.]

In the administrative opinion, the ALJ found that Plaintiff had a lesser functional capacity to lift only twenty pounds occasionally and ten pounds frequently with additional limitations, including the ability to alternate sitting and standing. [AR 13-14.] Although the ALJ noted Dr. Kumar's recommendation that Plaintiff have intermittent breaks after two hours of sitting or one hour of standing/walking [AR 16], the breaks were not included in the RFC determination; neither were they included in the hypothetical question asked of the vocational expert at the hearing.  Plaintiff asserts that the ALJ's failure to account for Plaintiff's need to take intermittent breaks was reversible error. [JS 16-17, 20-21.]

However, the range of work that Plaintiff is capable of performing, at the light or sedentary level with the option to alternate sitting and standing, takes into account that Plaintiff will have periodic breaks throughout the day.  For example, the full range of sedentary work requires an individual to be able to stand and walk for a total of approximately two hours during an eight-hour workday. See Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 at *6. Plaintiff is capable of standing/walking for a total of six hours each day.  Sedentary work also requires an individual to be able to sit for approximately six hours during an eight-hour workday, in roughly two-hour blocks of time. See SSR 96-9p at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").  Plaintiff's need for intermittent

13

breaks does not preclude work at this exertional level. See <u>Sims v. Astrue</u>, No. CV-07-0362-JPH, 2008 WL 2337031 at *9 (E.D. Wash. June 6, 2008)(finding Plaintiff's ability to perform sedentary work not affected by Plaintiff's unaddressed need for "frequent breaks" and noting that sit/stand option was taken into account). Accordingly, this issue is without merit.

### V. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED:   May 8, 2009

```
            /S/
        CARLA M. WOEHRLE
    United States Magistrate Judge
```